UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JOHN GREENLY,

        Plaintiff,

    v.

SARA LEE CORPORATION; GORDON
MAYBERRY; and DOES 1 through
10, inclusive,

        Defendants.

NO. CIV. S-06-1775 WBS EFB

<u>MEMORANDUM AND ORDER RE:</u>
<u>MOTION FOR SUMMARY JUDGMENT</u>

----oo0oo----

        Plaintiff John Greenly brought this action against his
former employer, defendant Sara Lee Corporation ("Sara Lee"), as
well as his former supervisor, defendant Gordon Mayberry,
alleging harassment and rights violations under state and federal
statutes and common law.  In separate motions addressing
plaintiff's respective charges against them, defendants now move
for summary judgment pursuant to Federal Rule of Civil Procedure
56.

///

///

1

1    I.    Factual and Procedural Background

2          At all times relevant to this action, plaintiff was

3    employed as a Bun Foreman in Sara Lee's Bun Production and Wrap

4    Department.[1]  (Greenly Dep. 73:4-11.)  Because plaintiff was a

5    member of the Bakery, Confectionery, Tobacco Workers and Grain

6    Millers' International Union, Local Union No. 85 ("Union"), his

7    relationship with Sara Lee was governed by a collective

8    bargaining agreement (CBA) negotiated between the Union and Sara

9    Lee.  (Id. at 70:5-23, 71:2-21.)

10         Throughout the course of his employment and up until

11   July 2004, Sara Lee had issued multiple warnings to plaintiff in

12   connection with more than two dozen infractions of its attendance

13   policy.[2]  (See Greenly Dep. at 119:6-19, 120:11-25,

14   121:14-122:22, 123:22-125:10, 127:1-128:17, 129:1-130:3,

15   132:5-11, 135:18-25, 137:11-16, 138:4-139:4, 140:14-19

16   (recounting several documented warnings--from 1992 through

17   ────────────────

18         [1]    Sara Lee is a global manufacturer and marketer of
     consumer products, including a wide range of fresh bread and
19   bakery goods. (Mayberry Decl. ¶ 3.)

20         [2]    Sara Lee's attendance policy during the applicable
     periods required managerial notice of an absence at least two
21   hours prior to the start of the shift; notice of tardiness
     required a call "as soon as practical." (Diaz Decl. Ex. A
22   ("Attendance Policy").)  Any employee who failed to adhere to
     this policy accumulated "attendance points." (Id.)  For example,
23   one point was assessed for each absence, while a half-point was
     assessed for each instance of tardiness, late call-in, or leaving
24   work early.  (Id.)  Leaving work without notifying a manager or
     failing to show or call ("no show-no call") could result in
25   termination, and all call-ins were required to be made by the
     employee himself.  (Id.)  An employee who accumulated 6.5 points
26   received a "written verbal" warning; at eight points, a written
     warning; at nine points, a three-day suspension without pay; and
27   the accumulation of ten points or more would result in discharge.
     (Id.)  Medical documentation of an absence was required for any
28   serious health condition, including any period of incapacity of
     more than three days. (Id.)

                                2

2004--made to plaintiff regarding his absenteeism and/or tardiness).)  These infractions resulted in multiple write-ups, three suspensions, and the issuance of two "last chance" agreements.  (Diaz Decl. ¶ 6.)

In July 2004, plaintiff took a medical leave of absence in connection with a non-industrial injury.  (Id. at ¶ 7; Greenly Dep. 141:18-24 (recounting that plaintiff suffered a severe injury to his Achilles tendon).)  Upon his return to work in January 2005, plaintiff continued to violate the attendance policy, incurring eight documented infractions in the period between January 2005 and May 2005.  (Id.; see also id. Ex. C (collection of official write-ups documenting January 2005 through May 2005 infractions).)  The situation came to a head on April 16, 2005, when plaintiff again failed to timely report for his shift.  (Id. at ¶ 8.)  Following this incident, defendant Mayberry, Sara Lee's Bun Department supervisor from 1998 to 2006 (Mayberry Decl. ¶ 2), issued plaintiff a "Demotion from Foreperson position WARNING" for "poor job performance" under the presumption that plaintiff had neither shown up nor called in on April 16, 2005 to notify Mayberry of his absence--i.e., an attendance policy infraction deemed a "no show-no call" that carried a possible penalty of termination.  (Diaz Decl. ¶ 8 (emphasis added); id. Ex. A (delineation of "Attendance Policy").)

On April 20, 2005, plaintiff disputed Mayberry's warning, asserting that he had not engaged in "poor job performance" and that his infraction had not been a "no show-no call" because he had in fact called in approximately two hours

3

after the start of his shift.  (<u>Id.</u> at ¶ 8.)  The Union subsequently filed a grievance on plaintiff's behalf disputing the discipline on April 25, 2005.  (<u>Id.</u> at ¶ 9.)  After meeting with the Union and concluding that plaintiff had indeed called in but that Mayberry was not made aware of this notice, Sara Lee agreed to reverse the discipline and reinstate plaintiff to his foreperson position.  (<u>Id.</u>; Mayberry Decl. ¶ 11; Greenly Dep. 154:4-7.)

On April 22, 2005, after receiving Mayberry's write-up and immediately prior to the Union's grievance filing regarding his discipline, plaintiff independently contacted Sara Lee's management and filed a separate, internal complaint contending that Mayberry's write-up was made in retaliation because Sara Lee had learned that he was looking for another job.  (Diaz Decl. ¶ 11.)  In connection with this written complaint, plaintiff also officially reported to management for the first time that Mayberry had engaged in inappropriate physical conduct with him at work since approximately 1990[3]--i.e., pinching plaintiff's waist and buttocks as well as pulling out his arm hair.[4]

---

[3]     Plaintiff contends that he had <u>verbally</u> complained about Mayberry's alleged conduct several times to management, Human Resources, and Mayberry himself prior to his April 22, 2005 written complaint.  (Pl.'s Stmt. of Undisputed Facts 20: # 18.)  However, plaintiff concedes that, prior to the April 22 complaint, he had neither filed a written complaint with Sara Lee nor petitioned the Union to file a grievance action against Sara Lee regarding Mayberry's alleged conduct.  (Greenly Dep. 184:24-25, 185:1-6.)

[4]     Until Mayberry issued the April 17, 2005 written warning, other Sara Lee employees had widely perceived plaintiff and Mayberry as friends both in and out of the work environment.  (Diaz Decl. ¶ 10.)  A number of employees also felt that because of their friendship, Mayberry unfairly favored Greenly--

4

(Greenly Decl. ¶ 3; Diaz Decl. ¶ 11.)   In addition to the Union's grievance and his own internal complaint to Sara Lee, plaintiff also filed a charge of discrimination against Sara Lee with the Equal Employment Opportunity Commission (EEOC) on May 19, 2005. (Diaz Decl. ¶ 25.)   Plaintiff claimed he had been subjected to a hostile work environment based on Mayberry's alleged conduct, including purported instances of sexual harassment and work-related calls to plaintiff's residence.[5]   (Id.)   The matter was subsequently referred to the EEOC for investigation.   (Id.)

        Sara Lee immediately began an investigation with respect to plaintiff's internal complaint and concluded that Mayberry had engaged in the alleged physical conduct.   (Id. at ¶

particularly in the area of attendance tracking.   (Mayberry Decl. ¶¶ 8-9; Diaz Decl. ¶ 10.)   Indeed, plaintiff admits that on several occasions, Mayberry "gave" him attendance policy write-ups that he in fact never turned in to Sara Lee and thus "didn't count." (Greenly Dep. 126:12-25; Mayberry Decl. ¶ 8.)

        Plaintiff also testified that, for the greater part of their working relationship, the two men were "friendly" and that at times he confided in Mayberry.   (Greenly Dep. 90:23-91:20, 93:14-17, 94:7-25, 191:10-11.)   Over the years that they worked together, plaintiff lived close to Mayberry, visited Mayberry's home with his wife and kids, and allowed his daughter to play at Mayberry's home. (Greenly Dep. 92:2-25, 93:1-13; Mayberry Decl. ¶ 12.)   For a time, Mayberry's wife--who also worked at the bakery--picked up plaintiff's daughter from school.   (Mayberry Decl. ¶ 12.)   Indeed, as late as April 2005, plaintiff described his relationship with Mayberry as follows:

        I am certain [my wife] was comfortable in both calling
        and talking with [Mayberry] during the many years that he
        and I have worked together[;] his family and my family
        have played together and been somewhat personable with
        each other.   [My wife] believed, as did I, that
        [Mayberry] and I were friends.

(Diaz Decl. Ex. D; Greenly Dep. 337:16-338:9.)

        [5]   Plaintiff's charge also alleged that Mayberry, who lived only a mile down the street from plaintiff, was excessively driving by plaintiff's residence.   (Id. Ex. T (copy of plaintiff's EEOC Charge).)

5

12; <u>id.</u> Ex. G.)   In response, Mayberry contended that plaintiff had himself engaged in similar "horseplay" with Mayberry, and thus any such conduct was both mutual and consensual.[6]   (Mayberry Decl. ¶ 12; Diaz Decl. ¶ 12.)   Sara Lee resolved the dispute by issuing Mayberry a warning not to engage in any kind of physical conduct with employees and advising plaintiff to report any further acts of physical conduct.   (Mayberry Decl. ¶ 17; Diaz Decl. ¶ 12.)

Plaintiff did not report any further physical conduct and concedes that, following his internal written complaint to Sara Lee, he and Mayberry had no further interaction.   (Diaz Decl. ¶ 13; Mayberry Decl. ¶¶ 14, 20; Greenly Dep. 194:12-14.)   In fact, shortly after Sara Lee's internal investigation began and prior to its resolution, Mayberry went out on medical leave.   (Mayberry Decl. ¶ 18.)   On May 21, 2005, prior to Mayberry's return from medical leave, plaintiff himself went out on medical leave.   (Greenly Dep. 210:7-10, 14-20; Diaz Decl. ¶ 14.)

During his leave, plaintiff was diagnosed with an anxiety disorder.   (Diaz Decl. Ex. J-1 (Hospital Leave Verification).)   At one point, plaintiff submitted a doctor's note indicating that he could return to modified work on June 20, 2005, but that he would have to be restricted from having visual or verbal contact with Mayberry.   (<u>Id.</u> at ¶ 14.)   However, plaintiff subsequently submitted a series of additional medical

---

[6]   Plaintiff denies that he engaged in any physical conduct with Mayberry aside from occasionally touching Mayberry's shoulders.   (Greenly Dep. 107:1-2.)   However, plaintiff does admit to "joking around" with Mayberry by, for example, intentionally "farting" in Mayberry's office.   (<u>Id.</u> at 95:5-96:15.)

notes indicating an inability to return to work until early 2006. (Id. at ¶ 15.)

On April 3, 2006, plaintiff was medically cleared to resume his full duties with "no restrictions" and therein returned to work at Sara Lee. (See Potratz Decl. Ex. G (March 26, 2006 copy of completed physician release form stating that plaintiff "[c]an return to full duties with NO RESTRICTIONS on 4/3/06") (emphasis in original).) Nonetheless, Sara Lee had reorganized its operations and staffing during plaintiff's leave. (Diaz Decl. ¶ 16.) As a result, Mayberry was transferred to the position of supervisor in the Bread Department, where he worked the swing shift (Mayberry Decl. ¶ 19); thus, plaintiff no longer reported to Mayberry, no longer worked in the same department, and no longer worked the same shift. (Diaz Decl. ¶ 16; Greenly Dep. 212:7-18.)

Despite these accommodations, plaintiff again began to violate Sara Lee's attendance policy almost immediately upon his April 3, 2006 return to work. (Diaz Decl. ¶ 17; Greenly Dep. 211:13-16.) By April 28, 2006, plaintiff had accrued several infractions for unauthorized absenteeism and was placed on suspension pending investigation. (Diaz Decl. ¶ 18; id. Ex. K (documented verification of plaintiff's absenteeism during April 2006).)

On May 4, 2006, the Union filed a grievance raising the single issue of plaintiff's most recent suspension. (Diaz Decl. ¶ 19.) Shortly after the Union's action, Sara Lee effectively mooted the grievance by reinstating plaintiff to return to work on May 7, 2006, but he again failed show up--yet incurring

7

additional attendance points. (Id.)  On May 9, 2006, Sara Lee contacted plaintiff via letter and outlined each of the unscheduled absences Sara Lee had recorded and advised plaintiff that any further deviation from the attendance policy could lead to his termination. (Diaz Decl. ¶ 20; id. Ex. N; Greenly Dep. 234:16-235:16.)  Despite this warning, plaintiff failed to report to work for the next three days.  (Id.)

On May 12, 2006, plaintiff produced a doctor's note stating that he had been seen at a clinic earlier that day and was now able to return to full duties. (Diaz Decl. ¶ 21; id. at Ex. O; Greenly Dep. 236:9-237:5.)  The note also purported to provide an explanation for much of plaintiff's past absenteeism by simply relaying that "[plaintiff] states he was unable to attend work and received clinic advice for the dates of 04/13/06, 04/14/06, 04/16/06, 04/17/06, 04/19/06, 04/20/06, 04/21/06, 05/07[/06] through 05/16/06"[7]--i.e., all the days listed as unscheduled absences in Sara Lee's previous letter to plaintiff. (Diaz Decl. ¶ 21.)  Asserting that the note failed to comply with its attendance policy--which required actual medical documentation of a serious medical condition as opposed to plaintiff's bare assertions that he had received clinic advice[8] (id. Ex. A ("Attendance Policy"))--Sara Lee did not reduce plaintiff's growing attendance infraction count.  On May 16,

_____

[7]  The author of the note, Dr. Daniel Gonzalez, specifically did not corroborate plaintiff's explanations, but merely wrote down the dates that plaintiff asserted he had missed work due to his anxiety.  (Greenly Dep. 237:3-6.)

[8]  During his deposition, plaintiff conceded that he did not receive clinical advice on each of the dates set forth in the doctor's note.  (Greenly Dep. 241:5-9.)

8

2006, plaintiff was once again placed on a three-day suspension
for unauthorized absences and was directed to return to work on
May 21, 2006.  (Id. at ¶ 22.)

Plaintiff returned from his suspension on May 21, 2006,
but subsequently left that same day without completing his shift.
(Id.; Greenly Dep. 246:5-247:20.)  By this time, plaintiff had
accrued more than fourteen points due to his attendance
infractions--well above the ten-point level that permits
termination.  (See Diaz Decl. Ex. A ("Progressive Discipline will
be used after (6) points as follows . . . Point 10 -
discharge.").)  Therefore, on May 23, 2006, Sara Lee notified
plaintiff that he would be terminated due to excessive
absenteeism.  (Id. at ¶ 22.)

On May 24, 2006, the Union filed a grievance on behalf
of plaintiff challenging his termination. (Id. at ¶ 23.)  Sara
Lee denied the grievance, the Union subsequently appealed, and a
Board of Adjustment hearing was set for August 2006 in accord
with the CBA.  (Id. at ¶ 24.)  On June 19, 2006, while the
parties awaited the Board's hearing, the EEOC notified plaintiff
that it had terminated its processing of his May 19, 2005
harassment charge and issued plaintiff a "Right to Sue" letter.
(Ochs-Tillotson Decl. Ex. H.)  Plaintiff subsequently filed this
action on July 13, 2006, alleging several state and common law
claims against Sara Lee and Mayberry.  Pursuant to 28 U.S.C. §
1441(b), Sara Lee removed the case to this court on August 10,
2006 based on diversity jurisdiction, 28 U.S.C. § 1332.
Meanwhile, on August 16, 2006, the Board--composed of two voting
Sara Lee representatives and two voting Union representatives--

upheld plaintiff's termination by a vote of 3-1.  (Diaz Decl. Ex. X.)

On September 20, 2006, plaintiff submitted a First Amended Complaint (FAC) that made mention of an additional "Right to Sue" letter stemming from a charge plaintiff apparently filed with the Department of Fair Employment and Housing (DFEH) on July 17, 2006.[9]  Following this court's December 13, 2006 Order granting in part and denying in part defendants' motion to dismiss the FAC, plaintiff submitted his Second Amended Complaint (SAC) on January 15, 2007, alleging twenty causes of action:[10] 1) battery, against Mayberry; 2) assault, against Mayberry; 3) sexual battery, against Mayberry; 4) retaliation in violation of the Fair Employment and Housing Act (FEHA), California Government Code §§ 12900-12996; 5) sexual harassment and a hostile work environment in violation of FEHA; 6) disability discrimination in violation of FEHA; 7) failure to prevent discrimination in violation of FEHA, against Sara Lee; 8) failure to accommodate for disability in violation of FEHA, against Sara Lee; 9) intentional infliction of emotional distress, against Sara Lee; 10) negligent infliction of emotional distress, against Sara Lee; 11) negligence, against Sara Lee; 12) negligence per se, against Sara Lee; 13) negligent hiring, training, supervision and/or

[9]   Defendants contend that they were not served with this charge and thus were not aware of its existence until its mention in the September 20, 2006 FAC.  (Sara Lee's Mem. in Supp. of Mot. for Summ. J. 11:16-19.)  Even after acknowledging its existence in the FAC, plaintiff purportedly failed to produce a copy of the charge during the discovery process--despite defendants' repeated attempts to attain it--until December 2007.  (Id. at 11 n.5.)

[10]   All causes of action are asserted against both Sara Lee and Mayberry, except where otherwise noted.

1 retention, against Sara Lee; 14) invasion of privacy; 15)

2 defamation, against Mayberry; 16) wrongful termination in

3 violation of FEHA, or in the alternative constructive discharge;

4 17) wrongful termination in violation of public policy; 18)

5 breach of contract, against Sara Lee; 19) breach of the implied

6 covenant of good faith and fair dealing, against Sara Lee; and

7 20) breach of duty to pay wages and provide rest breaks, against

8 Sara Lee.

9      Pursuant to Federal Rule of Civil Procedure 56,

10 defendants Sara Lee and Mayberry separately now move for summary

11 judgment on all claims.

12 II.  Discussion

13      Summary judgment is proper "if the pleadings, the

14 discovery and disclosure materials on file, and any affidavits

15 show that there is no genuine issue as to any material fact and

16 that the movant is entitled to judgment as a matter of law."

17 Fed. R. Civ. P. 56(c).  A material fact is one that could affect

18 the outcome of the suit, and a genuine issue is one that could

19 permit a reasonable jury to enter a verdict in the non-moving

20 party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

21 248 (1986).  The party moving for summary judgment bears the

22 initial burden of establishing the absence of a genuine issue of

23 material fact and can satisfy this burden by presenting evidence

24 that negates an essential element of the non-moving party's case.

25 Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

26 Alternatively, the movant can demonstrate that the non-moving

27 party cannot provide evidence to support an essential element

28 upon which it will bear the burden of proof at trial.  Id.

11

1    Once the moving party meets its initial burden, the

2   non-moving party "may not rely merely on allegations or denials

3   in its own pleading," but must go beyond the pleadings and "by

4   affidavits or as otherwise provided in [Rule 56,] set out

5   specific facts showing a genuine issue for trial."  Fed. R. Civ.

6   P. 56(e); Celotex Corp., 477 U.S. at 324; Valandingham v.

7   Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989).

8    In its inquiry, the court must view any inferences

9   drawn from the underlying facts in the light most favorable to

10  the party opposing the motion.  Matsushita Elec. Indus. Co. v.

11  Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court cannot

12  engage in credibility determinations or weigh the evidence, for

13  these are jury functions.  Anderson, 477 U.S. at 255.

14       A.   Claims Alleged Solely Against Defendant Mayberry

15            1.   Claim One (Battery) and Claim Two (Assault)

16            Based on the alleged physical conduct detailed above,

17  plaintiff alleges claims against Mayberry for assault and

18  battery.[11]  Mayberry contends that both claims fail as a matter

19  of law because they are barred by the workers' compensation

20  exclusivity rule.

21            Generally, an employee who sustains an industrial

22  injury "arising out of and in the course of the employment" is

23

24

25       [11]   The statute of limitation for assault and battery is
    two years.  Cal. Civ. Proc. Code § 335.1.  Plaintiff concedes
26  that he was on a non-work related leave of absence from July 2004
    until January 2005.  Thus, his assault and battery claims are
27  limited to the period between January and April 2005, the last
    occasion on which he had contact with Mayberry prior to filing
28  the instant action in July 2006.

limited to recovery under the workers' compensation system.[12]
Cal. Lab. Code § 3600(a); <u>Fermino v. Fedco, Inc.</u>, 7 Cal. 4th 701,
708 (1994).   To prevent injured employees from circumventing this
exclusivity rule by bringing lawsuits for work-related injuries
against co-employees, who in turn would seek indemnity from their
employers, the California Legislature subsequently provided
immunity to co-employees.  <u>See</u> Cal. Lab. Code § 3601(a) ("The
right to recover . . . compensation, pursuant to the provisions
of [the workers' compensation laws,] is . . . the exclusive
remedy for injury or death of an employee against any other
employee of the employer acting within the scope of his or her
employment.").

       There are, however, statutory exceptions to co-employee
immunity.  As relevant here, a civil suit is permissible when an
employee proximately causes another employee's injury or death by
a "willful and unprovoked physical act of aggression."  <u>Id.</u> §
3601(a)(1).  The California Supreme Court has clarified the
meaning of this exception, holding that commission of "unprovoked
physical acts of aggression" includes an intent to injure
requirement.  <u>Torres v. Parkhouse Tire Serv., Inc.</u>, 26 Cal. 4th

---

[12]    This rule of exclusivity is based upon

the presumed "compensation bargain," pursuant to which
the employer assumes liability for industrial personal
injury or death without regard to fault in exchange for
limitations on the amount of that liability.   The
employee is afforded relatively swift and certain payment
of benefits to cure or relieve the effects of industrial
injury without having to prove fault but, in exchange,
gives up the wider range of damages potentially available
in tort.

<u>Fermino v. Fedco, Inc.</u>, 7 Cal. 4th 701, 708 (1994) (quoting
<u>Shoemaker v. Myers</u>, 52 Cal. 3d 1, 16 (1990)).

995, 1006 (2001).  The court distinguished "unprovoked physical acts of aggression" from "horseplay,"[13] which consistently fall within the parameter of workers' compensation exclusivity rule. Id. at 1007.

Based on the evidence presented, it is not clear that plaintiff's assault and battery claims against Mayberry would be barred by the workers' compensation exclusivity rule.  It is undisputed that Mayberry repeatedly grabbed the sides of plaintiff's stomach as well as pulled out the hairs on plaintiff's arms.  (Diaz Decl. ¶¶ 11-12.)  Disputed evidence further demonstrates that Mayberry may have grabbed plaintiff's buttocks on multiple occasions.  (Greenly Decl. ¶ 3; Elhard Decl. ¶ 6.)  While Mayberry purports to depict his actions as good old fashioned horseplay, (Mayberry Decl. ¶ 12); see also Torres, 26 Cal. 4th at 1007 ("[Congress] has ensured that [section 3601(a)(1)'s] reach would not extend to acts traditionally viewed as horseplay that are otherwise subject to exclusive coverage under the workers' compensation system"), courts generally reserve this label for employer-condoned, non-aggressive acts that are the outgrowth of conduct inherent in the workplace.  See id. ("Generally, if an employer condones what courts have described as 'horseplay' among its employees, an employee who

_____

[13]  Examples of employee "horseplay" that courts have determined are barred by the workers' compensation exclusivity rule include:  Oliva v. Heath, 35 Cal. App. 4th 926, 933 (1995) (employees lowering co-employee's chair as a prank); Hodges v. Workers' Comp. Appeals Bd., 82 Cal. App. 3d 894, 898-99 (1978) (employees' friendly sparring match); Argonaut Ins. Co. v. Workmen's Comp. Appeals Bd., 247 Cal. App. 2d 669, 672 (1967) (ranch employees chasing each other around bunkhouse); and Pac. Employers Ins. Co. v. Ind. Accident Comm'n, 26 Cal. 2d 286, 294 (1945) (busboys throwing bread rolls at each other).

14

engages in it is within the scope of employment under section [3601(a)] and is thus immune from suit."); <u>Pac. Employers Ins. Co. v. Ind. Accident Comm'n</u>, 26 Cal. 2d 286, 294 (1945) ("[I]f the horseplay occasioning the injury is customary and permitted by the employer, injuries resulting therefrom arise out of the employment.").

Mayberry's conduct toward plaintiff does not necessarily appear to be within the scope of plaintiff's job description at Sara Lee.  <u>See</u> <u>Torres</u>, 26 Cal. 4th at 1008-09 ("To be within the scope of employment, the incident giving rise to the injury must be an outgrowth of the employment, the risk of injury must be inherent in the workplace, or typical of or broadly incidental to the employer's enterprise.").  Nor has Mayberry directed the court to instances in which Sara Lee condoned such "horseplay" among its employees; rather, upon being apprised of Mayberry's behavior toward plaintiff, Sara Lee issued a reprimand and admonished him not engage in any further physical conduct with Sara Lee employees.

Given the conflicting evidence as to the nature of Mayberry's conduct, triers of fact could reasonably infer an intent to injure that would take his purported actions outside the exclusivity rule's protection.  <u>Soares v. City of Oakland</u>, 9 Cal. App. 4th 1822, 1831 (1992); <u>see also</u> <u>Harris v. Itzhaki</u>, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citing <u>Lowe v. City of Monrovia</u>, 775 F.2d 998, 1008 (9th Cir. 1985)).  Accordingly, the court will deny Mayberry's motion for summary judgment with respect to plaintiff's claims for assault

and battery.

### 2.   Claim Three (Sexual Battery)

A sexual battery claim "does not duplicate" a common-law battery claim, and therefore demands a separate analysis.  Angie M. v. Superior Court, 37 Cal. App. 4th 1217, 1225 (1995).  Under California Civil Code section 1708.5, a person may be civilly liable for the commission of a sexual battery if he or she engages in any of the following behavior:

> (1) acts with the intent to cause a harmful or offensive contact with an intimate part of another, and a sexually offensive contact with that person directly or indirectly results;
> (2) acts with the intent to cause a harmful or offensive contact with another by use of his or her intimate part, and a sexually offensive contact with that person directly or indirectly results; or
> (3) acts to cause an imminent apprehension of the conduct described in (1) or (2), and a sexually offensive contact with that person directly or indirectly results.

Cal. Civ. Code § 1708.5(a)(1)-(3).  "'[O]ffensive contact' means contact that offends a reasonable sense of personal dignity," id. § 1708.5(f), and "'intimate part' means the sexual organ, anus, groin, or buttocks of any person, or the breast of a female." Id. § 1708.5(d).

While Mayberry admits to pinching plaintiff's stomach and pulling out his arm hairs, he asserts that this behavior alone was not sexually offensive and never involved plaintiff's intimate parts.  However, plaintiff has declared under the penalty of perjury that Mayberry also repeatedly grabbed and pinched his buttocks with the intent to sexually dominate him. (See Greenly Decl. ¶ 22 ("I suffered many sexual batteries at the hands of Mayberry[;] Mayberry would perpetrate very hard pinches

of my private areas including buttocks."); id. ("I felt and believed that Mayberry was attempting to dominate me sexually.").)  Moreover, plaintiff has supplemented his own allegations with statements from a former co-worker who purportedly bore witness to plaintiff's version of the events. (See Elhard Decl. ¶ 6 ("Routinely at work I witnessed [Mayberry] pinching [plaintiff] on the inner thighs, butt, waist and stomach areas and ripping out [plaintiff's arm hairs.") (emphasis added).)[14]  These submissions effectively raise a factual dispute regarding the sexual nature of Mayberry's conduct.

Because a jury must determine questions of intent and credibility--and thus could rationally find that Mayberry's conduct towards plaintiff was intentionally sexual in nature and

---

[14]  Defendants have raised 179 evidentiary objections to the majority of plaintiff's proffered evidence and declarations, contending that many of the submitted facts are "irrelevant," lack personal knowledge, and/or constitute conclusory allegations unsupported by fact. (See generally Defs.' Objections to Pl.'s Evidence.)  While some of the objections are meritorious and thus have been considered, this court finds the majority of these objections to be spurious, and believes defendants would be well served to give attention to the court's prior rulings.  See, e.g., Burch v. Regents of Univ. of Ca., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006) (noting that "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself; yet attorneys insist on using evidentiary objections as a vehicle for raising this point.  A court can award summary judgment only when there is no genuine dispute of material fact.  It cannot rely on irrelevant facts, and thus relevance objections are redundant.").  Moreover, the summary judgment standard permits the court to rely on information within a person's personal knowledge and thus allows the court to consider facts that would be admissible into evidence at trial in some form, even if they are not presented in that form for the purposes of the motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. Obviously, Rule 56 does not require the nonmoving party to depose her own witnesses.").

1  offended plaintiff's reasonable sense of personal

2  dignity--summary judgment is inappropriate.  See <u>Anderson v.</u>

3  <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) ("Credibility

4  determinations, the weighing of the evidence, and the drawing of

5  legitimate inferences from the facts are jury functions, not

6  those of a judge."); <u>Harris v. Itzhaki</u>, 183 F.3d 1043, 1051 (9th

7  Cir. 1999) ("Issues of credibility, including questions of

8  intent, should be left to the jury.").  Accordingly, the court

9  will deny Mayberry's motion for summary judgment with respect to

10  plaintiff's claim for sexual battery.

11              3.  <u>Claim Fifteen (Defamation)</u>

12         Plaintiff alleges that Mayberry defamed him by telling

13  coworkers that plaintiff had faked his workers' compensation

14  claim, was incompetent as a worker, and willingly succumbed to

15  being his homosexual lover.  (SAC ¶ 113.)  Because this alleged

16  defamation was not a written or otherwise fixed representation

17  suitable for a claim of libel, Cal. Civ. Code § 45, plaintiff's

18  allegation must satisfy the elements for slander.  <u>Id.</u> § 46.

19         As relevant here, "slander" is a false and unprivileged

20  publication, orally uttered, which either (1) tends directly to

21  injure [plaintiff] "in respect to his office, profession, trade

22  or business, either by imputing to him general disqualification

23  in those respects which the office or other occupation peculiarly

24  requires, or by imputing something with reference to his office,

25  profession, trade, or business that has a natural tendency to

26  lessen its profits" or (2) "by natural consequence, causes actual

27  damage."  <u>Id.</u>  The former is deemed slander per se, in which

28  damages are presumed.  <u>Moranville v. Aletto</u>, 153 Cal. App. 2d

                                18

667, 672 (1957).  The latter, however, requires proof of actual damage.  Id.  While statements regarding plaintiff's possible falsification of a workers' compensation claim and his purported professional incompetence implicate the aforementioned slander per se prong and thus damages are presumed, the statement as to plaintiff's homosexuality[15] would require a showing of actual damages.  Because plaintiff has made no such showing, the court will focus on the first two alleged statements.

Mayberry initially contends that the alleged statements regarding plaintiff's business or professional conduct are protected assertions of opinion, not fact.[16]  See Gregory v. McDonnell Douglas Corp., 17 Cal. 3d 596, 601 (1976) (stating that courts "apply the Constitution by carefully distinguishing between statements of opinion and fact, treating the one as

---

[15]    The majority of the courts that have previously found an accusation of homosexuality to be slander per se emphasized the fact that such a statement imputed criminal conduct.  See, e.g., Plumley v. Landmark Chevrolet, 122 F.3d 308, 310-11 (5th Cir. 1997).  The United States Supreme Court effectively extinguished this rationale in Lawrence v. Texas, 539 U.S. 558 (2003), where the Court held a Texas statute criminalizing same-sex sexual conduct was unconstitutional under the Due Process Clause because individuals have a "right of privacy" to engage in sexual acts in their homes.  Id. at 574-75.  The court also found that precedent to the contrary "demeans the lives of homosexual persons."  Id. at 575.  This court acknowledges that "[c]ontinuing to characterize the identification of someone as a homosexual [to be] defamation per se has the same effect."  Albright v. Morton, 321 F. Supp. 2d 130, 137 (D. Mass. 2004).

[16]    In light of the third party declaratory evidence plaintiff has submitted as well as Mayberry's arguments that his statements about plaintiff are protected under a qualified privilege, Mayberry apparently concedes that his alleged statements were published to at least one person other than plaintiff.  See, e.g., Elhard Decl. ¶ 19 (fellow co-employee's corroborating statements that "[Mayberry] would say that I wasn't really sick, that I was faking, which is not true [and Mayberry] would say the same things about [plaintiff] and others who were unfortunate enough to have to go out on disability").

constitutionally protected and imposing on the other civil

liability for its abuse); <u>see also</u> <u>Ringler Assocs. Inc. v. Md.</u>

<u>Cas. Co.</u>, 80 Cal. App. 4th 1165, 1181 (2000) ("It is an essential

element of defamation that the publication be of a false

statement of fact rather than opinion."). Although accusations

of "faking" or incompetence" when made by laymen might indeed

constitute mere opinion, similar accusations by superiors or

qualified professionals published to co-employees "carry a ring

of authenticity and reasonably might be understood as being based

on fact." <u>Slaughter v. Friedman</u>, 32 Cal. 3d 149, 154 (1982); <u>see</u>

<u>also</u> <u>Kahn v. Bower</u>, 232 Cal. App. 3d 1599, 1609 (1991)

("[S]tatements conveying an imputation of incompetence appear

actionable as against the objection that they lack the requisite

factual content."). "Where . . . the allegedly [defamatory]

remarks could have been understood by the average [person] in

either sense, the issue must be left to the jury's

determination." <u>Slaughter</u>, 32 Cal. 3d at 154 (citing <u>Good Gov't</u>

<u>Group of Seal Beach, Inc. v. Superior Court</u>, 22 Cal. 3d 672, 682

(1978)).

Mayberry also argues that his purported statements were

presumptively privileged via California Civil Code section 47(c),

which protects communications between interested persons.[17] Cal.

---

[17] Specifically, California Civil Code Code section 47(c)
provides that a publication is privileged if made

in a communication, <u>without malice</u>, to a person
interested therein, (1) by one who is also interested, or
(2) by one who stands in such a relation to the person
interested as to afford a reasonable ground for supposing
the motive for the communication to be innocent, or (3)
who is requested by the person interested to give the

Civ. Code § 47(c).  Specifically, statements made in an employment setting that relate to the behavior or conduct of the plaintiff employee generally fall squarely within this qualified privilege under the rationale that an employer has an economic interest in clarifying its policies and preventing future abuses of those policies.  <u>Cuenca v. Safeway S.F. Employees Fed. Credit Union</u>, 180 Cal. App. 3d 985, 995-96 (1986).  However, where the plaintiff employee sets forth sufficient facts and circumstances on which a jury may draw the inference of actual malice from the statements, the qualified privilege will be defeated.  <u>Gonsalves v. Associacao Protectora Uniao Madeirense</u>, 70 Cal. App. 2d 150, 154 (1945).

Here, the court acknowledges that plaintiff has not succinctly supported his slander claim with an express accusation stating the term "actual malice."[18]  (SAC ¶¶ 112-14); <u>see also Barger v. Playboy Enters.</u>, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983) (under Rule 9's heightened pleading standard, "actual malice must be pled with specificity").  However, actual malice may be shown by alleging that the defamatory statements were made with "knowledge that it was false or with reckless disregard of

_____

information.

Cal. Civ. Code § 47(c) (emphasis added).

[18]    It is altogether difficult to fully ascertain what plaintiff--who is represented by counsel--is asserting in his opposition, almost half of which is comprised of string citations to cases setting forth the standard for Federal Rule of Procedure 56 "summary judgment" motions.  His arguments are consistently disjointed, unrelated to any of the issues raised before the court over the past two years of litigation, and at times, barely intelligible.  Nonetheless, the court has attempted to discern and adjudicate plaintiff's position in the light most favorable to him.

whether it was false or not." Nicosia v. De Rooy, 72 F.Supp.2d 1093, 1108 (N.D. Cal. 1999).  Plaintiff has averred that Mayberry knowingly made false accusations regarding plaintiff's professional conduct and competence that--when read in the light most favorable to plaintiff--may be sufficient to support an inferential finding that Mayberry "entertained toward [plaintiff] a feeling of hatred or ill will . . . going beyond that which the occasion apparently justifies" and thus constituting actual malice. Romaneck v. Deutsche Asset Mgmt., No. C05-2473, 2005 WL 2171987, at *7 (N.D. Cal. Sept. 6, 2005) (quoting Everett v. Cal. Teachers Ass'n, 208 Cal. App. 2d 291, 295 (1962)); Gonsalves, 40 Cal. App. 2d at 154 (holding that actual malice "may be inferred from all the facts and circumstances of the particular transaction").[19]

Accordingly, because a reasonable jury could find an inference of actual malice inherent in Mayberry's purported statements, see McMann v. Wadler, 189 Cal. App. 2d 124, 129 (1961) ("The existence or nonexistence of malice is a question of fact for the jury."), the court will deny Mayberry's motion for summary judgment with respect to plaintiff's claim for

---

[19]    In his opposition, Mayberry hastily makes the unconvincing argument that plaintiff's defamation claim is barred by the one-year statute of limitations set out in the California Code of Civil Procedure section 340.  Cal. Civ. Pro. Code § 340(c).  Not only does Mayberry fail to properly raise a section 340(c) affirmative defense in his Answer to plaintiff's SAC, but he wholly fails to carry his burden of proving that none of his allegedly false statements were made within a year preceding plaintiff's initiation of this action.  Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1122 (9th Cir. 2007) ("[T]he statute of limitations is an affirmative defense [and] the defendant bears the burden of proving that the plaintiff filed beyond the limitations period.").

1  defamation.

2      B.   <u>FEHA Claims Alleged Against Sara Lee and/or Mayberry</u>

3          1.   <u>Claim Five (Sexual Harassment/Hostile Work</u>

4              <u>Environment against Sara Lee and Mayberry)</u>

5        Plaintiff alleges that Sara Lee and Mayberry unlawfully

6  brought about a hostile work environment due to Mayberry's

7  sexually harassing conduct.  Under FEHA, it is unlawful for an

8  employer "because of the . . . sex . . . of any person . . . to

9  discriminate against the person in compensation or in terms,

10  conditions, or privileges of employment . . . or harass an

11  employee."  Cal. Gov't Code § 12940(a), (j)(1).  "An employer is

12  vicariously liable 'for an actionable hostile environment created

13  by a supervisor with immediate (or successively higher) authority

14  over the employee.'"  <u>Hardage v. CBS Broad., Inc.</u>, 427 F.3d 1177,

15  1183 (9th Cir. 2005) (quoting <u>Montero v. AGCO Corp.</u>, 192 F.3d

16  856, 861 (9th Cir. 1999)).

17        To establish a prima facie case of sexual harassment,

18  an employee must prove "(1) that [he or she] was subjected to

19  verbal or physical conduct of a harassing nature, (2) that this

20  conduct was unwelcome, and (3) that the conduct was sufficiently

21  severe or pervasive to alter the conditions of [his or her]

22  employment and create an abusive working environment."  <u>Pavon v.</u>

23  <u>Swift Trans. Co.</u>, 192 F.3d 902, 908 (9th Cir. 1999); <u>see also</u> <u>id.</u>

24  (outlining, under Title VII, 42 U.S.C. §§ 2000e-2000e-17, the

25  standard for an employee's sexual harassment claims) <u>and</u> <u>Lyle v.</u>

26  <u>Warner Bros. Television Prod.</u>, 38 Cal. 4th 264, 278 (2006)

27  (noting that standards for hostile work environment/sexual

28  harassment claims under FEHA are identical to those under Title

VII).  The "sexually objectionable environment must be both
objectively and subjectively offensive, one that a reasonable
person would find hostile or abusive, and one that the victim in
fact did perceive to be so."  <u>Faragher v. City of Boca Raton</u>, 524
U.S. 775, 787 (1998) (citation omitted).

a.   <u>Conduct of a Harassing Nature</u>

"The first element of the hostile environment claim
requires that the harasser's conduct be . . . either sexual in
nature or perpetrated because of the recipient's gender."  <u>Davis
v. Cal. Dep't of Corr.</u>, No. S-93-1307, 1996 WL 271001, at *7
(E.D. Cal. Feb. 23, 1996).  In response to plaintiff's
allegations that Mayberry's conduct constitutes actionable sexual
harassment, Sara Lee and Mayberry proffer the futile argument
that Mayberry's conduct, while possibly intimidating and
bothersome, was neither sexual nor motivated by a general
hostility based on gender.

Based on disputed evidence, plaintiff has demonstrated
that he believes Mayberry is homosexual and that, on numerous
occasions, he was a target of Mayberry's alleged sexual
approaches during their working relationship--including the
pinching of intimate areas such as the buttocks.  (<u>See</u> Greenly
Decl. ¶ 5 ("I am absolutely not gay and it is absolutely
disgusting and extremely offensive to me to be hit on or have
sexual advances by another man, especially my boss, and to feel
powerless in the situation, and to have that repeated routinely
at work."); Pl.'s Resp. to Sara Lee's Interrogs. # 2 (regarding
specifics of alleged incidents, plaintiff stated that "[t]here
are too many instances to recall 'each and every instance' as to

24

date and time, but I have been assaulted by [Mayberry] . . . when
he would intentionally and maliciously pinch my sides, pinch my
buttocks, pinch my stomach area, [and] my legs"); Elhard Decl. ¶
6 ("Routinely at work I witnessed [Mayberry] pinching [plaintiff]
on the inner thighs, butt, waist and stomach areas and ripping
out [plaintiff's] arm hairs.").)

There are genuine issues of material fact whether most,
if not all, of the incidents described are both subjectively and
objectively sexual in nature and thus would align with past
behavior courts have held to constitute sexual harassment.  <u>See</u>
<u>Farmers Ins. Group v. County of Santa Clara</u>, 11 Cal. 4th 992,
998-99 (1995) (supervisor engaged in sexual harassment when he
touched trainee "on the back and front of her thighs three or
more times" and "grabbed or slapped [another trainee] on the
buttocks"); <u>Davis v. Cont'l Airlines, Inc.</u>, 59 Cal. App. 4th 205,
208 (1997) (supervisor committed sexual harassment when he rubbed
against plaintiff's buttocks); <u>Kelly-Zurian v. Wohl Shoe Co.</u>, 22
Cal. App. 4th 397, 409 (1994) (upholding jury verdict for sexual
harassment where supervisor "touched [plaintiff's] breast and
crotch and . . . regularly pinched her buttocks").

The court also cannot agree with Sara Lee's contention
that "there is no evidence that Mayberry's alleged conduct was
<u>because of sex</u>" and thus could have happened to a person of any
gender.  (Sara Lee's Mem. in Supp. of Mot. for Summ. J. 24:23
(emphasis in original).)  The fact that a female employee could
have been put in the same position as plaintiff, and subject to
the same alleged conduct, does not prove that a female employee
ever was.  Indeed, neither Sara Lee nor Mayberry have produced

25

1   any evidence demonstrating that female employees were subjected
2   to the same treatment as plaintiff.  <u>See</u> <u>Oncale v. Sundowner</u>
3   <u>Offshore Servs.</u>, 523 U.S. 75, 80 (1998) ("The critical issue . .
4   . is whether members of one sex are exposed to disadvantageous
5   terms or conditions of employment to which members of the other
6   sex are not exposed." (quoting <u>Harris v. Forklift Sys.</u>, 510 U.S.
7   17, 25 (1993) (Ginsburg, J., concurring))).

        b.   <u>Unwelcome Conduct</u>

9           The evidence could also allow plaintiff to establish
10  that Mayberry's alleged conduct was unwelcome.  Sara Lee and
11  Mayberry attempt to depict the conduct as incidental to a
12  purportedly amicable social context between plaintiff and
13  Mayberry, asserting that plaintiff and Mayberry were once
14  "drinking buddies," considered one another friends, attended each
15  others' parties, and allowed their respective spouses to pick up
16  their collective children from school.  (Sara Lee's Mem. in Supp.
17  of Mot. for Summ. J. 26:11-24.)  While these facts may be
18  sufficient for the jury to conclude that Mayberry's conduct was
19  welcome, they do not make the contrary conclusion unreasonable.
20  The latter possibility is further reinforced in light of
21  plaintiff's alleged distaste for Mayberry's behavior and numerous
22  assertions that he repeatedly contacted management and Human
23  Resources to protest this treatment.

        c.   <u>Severe or Pervasive Conduct</u>

25          Finally, Sara Lee and Mayberry argue that Mayberry's
26  alleged harassing acts were simply occasional instances of
27  "teasing and roughhousing" and thereby were insufficiently severe
28  or pervasive to create a hostile work environment.  (Sara Lee's

26

1  Mem. in Supp. of Mot. for Summ. J. 27:3-6.)   In support of their

2  position, Sara Lee and Mayberry cite a number of cases in which

3  federal and California courts found that a defendant's alleged

4  conduct failed to reach an actionable level of severity or

5  pervasiveness.   See, e.g., Lyle v. Warner Bros. Television Prod.,

6  38 Cal. 4th 264, 282 (2006) (noting that a hostile work

7  environment claim "is not established where a supervisor or

8  coworker simply uses crude or inappropriate language in front of

9  employees").

10       None of these cases, however, involve conduct as severe

11  and pervasive as that which plaintiff alleges here.   At most, the

12  court has before it conflicting testimony regarding whether some

13  incidents involving plaintiff were actually abnormal or took

14  place as often as plaintiff and/or additional witnesses describe

15  them.   To resolve these conflicting accounts, the court would

16  need to undertake credibility determinations, which would invade

17  the province of the jury.   See Doerflet-Casner v. Placer County

18  Dept. of Pub. Works, No. 03-1864, 2006 WL 1581856, at *6 (E.D.

19  Cal. June 2, 2006) ("[S]orting out what really happened based on

20  conflicting accounts is the jury's job.").

21       Plaintiff has furnished evidence that Mayberry

22  indicated a sexual interest in plaintiff and combined his

23  interest with numerous instances of unwelcome, severe, and

24  pervasive behavior.   As such, a reasonable jury could find that

25  Mayberry's conduct created a hostile work environment.

26  Accordingly, the court will deny Sara Lee and Mabery's motions

27  for summary judgment with respect to plaintiff's claim for sexual

28  harassment/hostile work environment.

27

2.   <u>Claim Seven (Failure to Prevent against Sara Lee)</u>

Once an employer knows or should know of harassment, a remedial obligation arises.  <u>Fuller v. City of Oakland</u>, 47 F.3d 1522, 1528 (9th Cir. 1995); <u>see also</u> <u>Steiner v. Showboat Operating Co.</u>, 25 F.3d 1459, 1464 (9th Cir. 1994) (when employee is sexually harassed, the "only question is whether [the employer] is relieved of liability for [the harasser's] actions because it took sufficient disciplinary and remedial action in response to [the employee's] complaints.").

Plaintiff claims that Sara Lee violated FEHA by failing "to take all reasonable steps necessary to prevent discrimination and harassment from occurring" after plaintiff notified it of Mayberry's conduct.  Cal. Gov't Code § 12940(k).  In 2005, upon receipt of the written complaint plaintiff had filed shortly after his Union grievance, Sara Lee conducted an investigation into Mayberry's behavior and subsequently prohibited him from engaging in any kind of physical conduct with employees.  (Diaz Decl. ¶ 12.)  Thereafter, Sara Lee transferred Mayberry to another supervisor position so that plaintiff would no longer have to work in the same department or on the same shift as Mayberry.  (<u>Id.</u> at ¶ 16.)

However, plaintiff has raised a factual dispute as to when Sara Lee "knew or should have known" of the alleged harassment and the adequacy of their contemporaneous steps to prevent it.  <u>Fuller</u>, 47 F.3d at 1528.  Specifically, plaintiff contends that despite several informal complaints he made to Sara Lee's management and Human Resources regarding Mayberry's conduct prior to submission of the 2005 written complaint, Sara Lee not

28

1  only failed to respond but certain on-site managers made light of

2  plaintiff's dilemma.  (See Diaz Decl. Ex. T (May 19, 2005

3  Administrative Compl.) (stating that following plaintiff's verbal

4  complaints, "[Operations Manager] Nabil Elia has asked me

5  sarcastically several times if I have received any harassing

6  telephone calls lately").)

7       Sara Lee does not suggest that plaintiff's prior

8  complaints were insufficient to put Sara Lee on notice of the

9  harassment.  Nor has it presented the court with a formal

10 anti-sexual harassment policy or procedure that its employees are

11 instructed to follow.  Any such policy is also noticeably absent

12 from the CBA between Sara Lee and the Union.

13      Even if such a policy existed, repeated verbal

14 complaints to management and Human Resources in lieu of such a

15 policy's strict reporting procedures would nonetheless likely be

16 sufficient to alert Sara Lee of the harassment--thus initiating

17 its remedial obligation.  See Nichols v. Azteca Rest. Enters.,

18 256 F.3d 864, 876 n.10 (9th Cir. 2001) ("Although these

19 complaints [to plaintiff's assistant and general managers] did

20 not follow the formal reporting requirements of Azteca's

21 anti-harassment policy, they were sufficient to place the company

22 on notice of the harassment.").  Moreover, while an employer's

23 organizational structure is relevant in determining the extent of

24 its knowledge, Sara Lee's corporate structure is not so vast "as

25 to make it impractical for managers to communicate with the

26 corporate office about such important matters as harassment."

27 Id.  Accordingly, the court will deny Sara Lee's motion for

28 summary judgment with respect to plaintiff's failure to prevent

1    claim.

2          3.    Claim Four (Retaliation against Sara Lee and

3                Mayberry), Claim Six (Disability Discrimination

4                against Sara Lee and Mayberry), and Claim Eight

5                (Failure to Accommodate against Sara Lee)

6          Sara Lee and Mayberry correctly contend that

7    plaintiff's non-sexual harassment FEHA claims fail because

8    plaintiff did not properly exhaust his administrative remedy.

9    Okoli v. Lockheed Technical Operations Co., 36 Cal. App. 4th

10   1607, 1613 (1995) ("[E]xhaustion of the administrative remedy is

11   a jurisdictional prerequisite to resort to the courts.").

12   Specifically, in contrast to his May 19, 2005 Administrative

13   Complaint alleging the above-addressed sexual harassment claims,

14   plaintiff inexplicably failed to properly verify his subsequent

15   July 17, 2006 DFEH Complaint alleging the remaining FEHA claims.

16         Under FEHA, an employee must file a verified complaint

17   with the DFEH in order to be entitled to file a civil action in

18   court based on violations of the FEHA.  Cal. Gov't Code §

19   12965(b); see also Blum v. Superior Court, 141 Cal. App. 4th 418,

20   422 (2006) ("[A] verified DFEH Complaint was a prerequisite to

21   bringing a civil action."); Martin v. Lockheed Missiles & Space

22   Co., 29 Cal. App. 4th 1718, 1727 (1994) ("[T]he DFEH's duty to

23   act is triggered by 'the filing of a complaint,' which plainly

24   means the verified complaint in writing.").  Though a copy of

25   plaintiff's typed signature appears on the July 17, 2006 DFEH

26   Complaint, (see Ochs-Tillotson Decl. Ex. H (July 17, 2006 DFEH

27   Compl.)), plaintiff has unequivocally testified that he did not

28   sign the complaint, was unaware it had been filed, and in fact

                                  30

1  had never seen it until his May 7, 2007 deposition.  (<u>See, e.g.</u>,

2  Greenly Dep. 24:2-8 ("Q: Other than [the May 19, 2005

3  Administrative Complaint], have you filed any other charge of

4  discrimination with any agency concerning the allegations set

5  forth in [the instant action]?  A: Any other besides the EEOC or

6  Fair Housing?  Q: Other than this document [May 19 2005

7  Administrative Complaint] right here, this charge of

8  discrimination.  A: No."), 32:22-33:3 ("Q: Did you fill that

9  document [July 17, 2006 DFEH Complaint] out?  A: No . . . Q: Have

10 you seen that document [July 17, 2006 DFEH Complaint] before

11 today?  A: No.").)

12         After reviewing Sara Lee and Mayberry's arguments to

13 this effect as iterated in their instant motions, plaintiff

14 submitted a supplemental declaration asserting that his attorney

15 had signed plaintiff's name on the July 17, 2006 DFEH Complaint,

16 thereby verifying it.  (Greenly Supplemental Decl. ¶ 15.)  In

17 rare and prudent circumstances, an attorney may indeed verify a

18 DFEH complaint on behalf of his or her client.  <u>Blum</u>, 141 Cal.

19 App. 4th at 425-28.  However, an attorney may only do so "by

20 subscribing his or her own name to the complaint" subject to the

21 penalties of perjury.  <u>Id.</u> at 428; <u>id.</u> at 427-28 (finding that an

22 "attorney's signature attests to the good faith of the

23 allegations and the client's concurrence in them," but

24 nonetheless "caution[ing] attorneys about verifying such

25 complaints unless they believe the allegations made therein to be

26 true . . . as they are subject to penalties for perjury if they

27 sign their name to DFEH complaints").  In contrast, the law is

28 clear that "[t]he attorney may not verify by signing the client's

1  name." Id.

2        Here, plaintiff's counsel clearly attempted to verify

3  the July 17, 2006 DFEH Complaint by subscribing plaintiff's name,

4  which falls squarely outside the applicable law.   Therefore,

5  because plaintiff has failed to exhaust his administrative

6  remedy,[20] the court cannot consider the July 17, 2006 DFEH

7  Complaint.

8        Nonetheless, the inquiry into whether the court may

9

10       [20]  Plaintiff has also failed to exhaust his administrative
    remedy on the alternate ground that he has not submitted evidence
11  demonstrating that his attorney served the July 17, 2006 DFEH
    Complaint upon either Sara Lee or Mayberry as required by
12  California Government Code section 12962(b), which provides:

13       [W]here a person claiming to be aggrieved by an alleged
         unlawful practice hires or retains private counsel for
14       purposes of representation of the claim, the private
         counsel, and not the department, shall cause the verified
15       complaint filed under the provisions of this part to be
         served, either personally or by certified mail with
16       return receipt requested, upon the person, employer,
         labor organization, or employment agency alleged to have
17       committed the unlawful practice.

18  Cal. Gov't Code § 12962(b) (emphasis added).   Additionally, this
    "[s]ervice shall be made at the time of initial contact with the
19  person, employer, labor organization, or employment agency or the
    agents thereof, or within 60 days, whichever first occurs." Id.
20  § 12962(c).
         Plaintiff makes the wholly conclusory assertion that
21  his counsel personally served the complaint on Sara Lee.  (Pl.'s
    Mem. in Opp'n. to Sara Lee's Mot. for Summ. J. 15:23-27.)   To
22  date, however, plaintiff has not produced a proof of service or
    any evidence of the date, time, street address, and recipient of
23  service. See Leer v. Murphy, 844 F.2d 628, 631 (9th Cir. 1988)
    ("A party opposing a motion for summary judgment cannot rest on
24  conclusory allegations, but must set forth specific facts showing
    that there is a genuine issue for trial.").   Rather, the evidence
25  shows that, despite Sara Lee and Mayberry's counsel's repeated
    requests for all documents related to the instant action, the
26  July 17, 2006 DFEH Complaint was not produced until December
    2007.   This eventual disclosure occurred well after the sixty-day
27  period following issuance of plaintiff's September 13, 2006 Right
    to Sue Letter or plaintiff's counsel's initial contact with Sara
28  Lee and/or Mayberry.

                                  32

consider plaintiff's additional FEHA claims, as opposed to explicit consideration of the charges listed in his July 17, 2006 DFEH Complaint, does not end here.  Rather, "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the [EEOC or DFEH],[21] the judicial complaint nevertheless may encompass any discrimination <u>like or reasonably related to</u> the allegations of the [EEOC or DFEH] charge, including new acts occurring <u>during the pendency</u> of the charge before the EEOC."  <u>Oubichon v. N. Am. Rockwell Corp.</u>, 482 F.2d 569, 571 (9th Cir. 1973) (emphasis added).  Thus, "if an investigation of what <u>was</u> charged in the EEOC would necessarily uncover other incidents that were not charged, the latter incidents could be included in a subsequent action."  <u>Okoli v. Lockheed Technical Operations Co.</u>, 36 Cal. App. 4th 1607, 1615 (1995) (emphasis in original).

The evidence does not show, nor does plaintiff attempt to argue, that his remaining FEHA claims are "like or reasonably related to" his original sexual harassment claims such that they would "reasonably have been uncovered in an investigation of the charges that were made."  <u>Id.</u> at 1617.  Plaintiff specifically limited the focus of his May 19, 2005 Administrative Complaint to Mayberry's alleged sexual harassment, concluding with the statement, "I believe I have been discriminated against because

---

[21]    Again, although some of the cited precedent deals with the federal counterpart of FEHA, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17, because "the antidiscrimination objectives and public policy purposes of the two laws are the same, we may rely on federal decisions to interpret analogous parts of the state statute."  <u>Sandhu v. Lockheed Missiles & Space Co.</u>, 26 Cal. App. 4th 846, 851 (1994).

of my sex, in violation of [antidiscrimination laws]." (Diaz
Decl. Ex. T (May 19, 2005 Administrative Compl.)); <u>see also</u>
<u>Okoli</u>, 36 Cal. App. 4th at 1617 ("[T]he more specific the
original charge, the less likely that expansion into other areas
will be allowed.") (citations omitted).

Courts have long held that a particular claim of sexual
harassment or discrimination filed with an administrative agency
"would not reasonably trigger an investigation into
discrimination on the ground of disability" and/or retaliation.
<u>Rodriguez v. Airborne Express</u>, 265 F.3d 890, 897 (9th Cir. 2001);
<u>see id.</u> at 897-98 (holding that the plaintiff could not go
forward with a non-exhausted disability discrimination claim
because such claim is inherently unrelated to his original and
properly-exhausted racial discrimination charge); <u>Latu v. Am.</u>
<u>Airlines</u>, No. 00-3301, 2001 WL 1658289, at *6 (N.D. Cal. Dec. 18,
2001) ("The claim of retaliation is not like or reasonably
related to the allegations in [the plaintiff's] EEOC charge,
which focused solely on his claim that he was harassed."); <u>Barron</u>
<u>v. United Air Lines, Inc.</u>, No. 92-1364, 1993 WL 140630, at *5
(N.D. Cal. Apr. 20, 1993) ("[T]he scope of the administrative
investigation into [plaintiff's] Charge of Discrimination would
not reasonably have included an investigation into . . . claims
[of] retaliation for complaining about discrimination.").

Moreover, the additional allegations cannot be said to
have occurred "during the pendency of the charge before the
[agency]." <u>Oubichon v. N. Am. Rockwell Corp.</u>, 482 F.2d 569, 569
(9th Cir. 1973). The alleged disability discrimination and
retaliation took place nearly a year after the EEOC

34

1   simultaneously referred the matter to the DFEH and issued

2   plaintiff his June 2, 2005 Right to Sue Letter (stemming from the

3   May 19, 2005 Administrative Complaint), marking the close of its

4   investigation into plaintiff's sexual harassment charge.   Thus,

5   the EEOC was put on the sole notice of plaintiff's sexual

6   harassment charge, and its investigation would not have included

7   inquiry into plaintiff's additional FEHA claims even if they were

8   reasonably related.   <u>Okoli</u>, 36 Cal. App. 4th at 1617.   As the

9   California Court of Appeals noted in <u>Okoli</u>,

10          a timely charge with the EEOC is one requirement for the
            court's jurisdiction because of the goal of [the
11          antidiscrimination laws is] for the EEOC to have the
            opportunity to investigate and obtain voluntary
12          compliance with the law. . . . Since the EEOC cannot
            have had the opportunity to investigate and conciliate
13          events occurring subsequent to the [original] charge
            filed with it, allegations regarding incidents occurring
14          after the EEOC charge and after the filing of the
            complaint do not meet the jurisdictional prerequisite to
15          this federal court action.

16  <u>Id.</u>

17          If simply re-alleging the remaining FEHA claims in this

18  action following his failure to properly verify and serve his

19  July 17, 2006 DFEH Complaint were deemed sufficient, it would

20  allow plaintiff to bypass, and thus defeat, the exhaustion

21  requirement--the purpose of which is "to give the administrative

22  agency the opportunity to investigate, mediate, and take remedial

23  action." <u>Stewart v. U.S. Immigration & Naturalization Serv.</u>, 762

24  F.2d 193, 198 (2d Cir. 1985).   Such an approach is perceptibly

25  antithetical to the exhaustion requirement, the satisfaction of

26  which is particularly appropriate where, as here, the remaining

27  FEHA claims are unrelated to the original claim.   Accordingly,

28  the court will grant Sara Lee and Mayberry's motions to for

                                    35

1   summary judgment with respect to plaintiff's FEHA claims for

2   retaliation (Sara Lee and Mayberry), disability discrimination

3   (Sara Lee and Mayberry), and failure to accommodate (Sara Lee).

4       C.   Common Law Claims Alleged Against Both Sara Lee and

5            Mayberry

6            1.   Claim Fourteen (Invasion of Privacy)

7            The right to privacy imposes liability for four types

8   of activities: (1) intrusion into private matters; (2) public

9   disclosure of private facts; (3) publicity placing a person in a

10  false light; and (4) misappropriation of a person's name or

11  likeness. Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1,

12  24 (1994). Plaintiff's common law invasion of privacy claims

13  against Sara Lee and Mayberry are based on allegations regarding

14  Mayberry's supposed intrusions with respect to plaintiff's home,

15  public disclosure of private facts about plaintiff, and

16  depictions to coworkers insinuating that plaintiff was faking his

17  injuries for workers' compensation purposes. (SAC ¶ 111.) Thus,

18  these allegations fall within the first, second, and third

19  aforementioned categories, respectively.

20            a.   Intrusion into Private Matters

21            To make a claim under the common law theory of

22  intrusion into private matters, a plaintiff must allege (1) that

23  the defendant penetrated some zone of physical or sensory privacy

24  surrounding the plaintiff (2) to which the plaintiff had a

25  "reasonable expectation of seclusion or solitude." Shulman v.

26  Group W Prods., Inc., 18 Cal. 4th 200, 231 (1998). Moreover, the

27  invasion must be done "in a manner highly offensive to a

28  reasonable person." Id.

1    Plaintiff's intrusion allegations stem from his wife's

2    contention that she often saw Mayberry drive by plaintiff's

3    residence and "star[e] daggers at me as I was in front of my

4    home." (Mandi Greenly Decl. ¶ 7.)  These facts alone cannot

5    demonstrate that Mayberry intruded into plaintiff's private

6    matters or encroached on any reasonable expectation of privacy.

7    Not only was the street in front of plaintiff's house a public

8    street, but Mayberry's purported leering took place only while

9    plaintiff's wife was outside and in front of her home.  See Kyllo

10   v. United States, 533 U.S. 27, 44 (2001) (noting that homeowners

11   are limited to "a reasonable expectation of privacy concerning

12   what takes place within the home") (emphasis added); Finley v.

13   Hartford Life & Accident Ins. Co., No. 06-62472007, WL 4374417,

14   at *11 (N.D. Cal. Dec. 14, 2007) (holding that plaintiff lacked a

15   reasonable expectation of privacy where "the investigator

16   videotaped only activities that were plainly observable by

17   someone standing on the street across from Plaintiff's house").[22]

18               b.   Public Disclosure of Private Facts

19   The essential elements of the public disclosure of

20   private facts tort are (1) public disclosure (2) of a private

21   fact (3) that would be offensive and objectionable to a

22   reasonable person and (4) which is not of legitimate public

23   concern.  Shulman, 18 Cal. 4th at 214.  Outside of his bare

24   assertion that Mayberry "publicly disclos[ed] private facts of

25   Plaintiff which [were] highly offensive to Plaintiff," (SAC ¶

26   111), plaintiff has neither accurately pled the elements nor

27

28   [22]   Moreover, it is undisputed that Mayberry lived in the
     same neighborhood as plaintiff.  (Mandi Greenly Decl. ¶ 8.)

                                37

provided evidence related to Sara Lee or Greenly's alleged public disclosure of private facts.

c.   Publicity Placing a Person in False Light

A "false light" claim is in substance equivalent to a libel claim and must satisfy the same requirements of a libel claim, including proof of malice. Selleck v. Globe Int'l, Inc., 166 Cal. App. 3d 1123, 1133 (1985). Here, plaintiff merely reproduces the allegations from his above-addressed slander claim regarding Mayberry's purportedly false oral statements to coworkers that plaintiff had faked his injuries in order to prove his workers' compensation claim. (SAC ¶ 111.) California law is well-settled that such oral communications cannot substantiate an invasion of privacy/"false light" claim. See Hill v. Nat'l Collegiate Athletic Ass'n, 7 Cal. 4th 1, 27 n.7 (1994) ("[T]he common law right of privacy 'may not be violated by word of mouth only' and can be infringed only by 'printings, writings, pictures or other permanent publications.'" (quoting Grimes v. Carter 241 Cal. App. 2d 694, 698-99 (1966))).

Accordingly, because plaintiff has not provided the court with evidence demonstrating that either his private matters were intruded upon, certain private facts were publicly disclosed, or he was placed in a false light, the court will grant Sara Lee and Mayberry's motions for summary judgment with respect to plaintiff's claims for invasion of privacy.

2.   Claim Sixteen (Constructive Discharge)[23]

---

[23]   As an alternative to his claim for constructive discharge, plaintiff also alleges an embedded claim for wrongful termination in violation of FEHA. (SAC ¶ 116.) Because the

38

1            A constructive discharge occurs "when the employer's

2   conduct effectively forces an employee to resign." <u>Turner v.</u>

3   <u>Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238, 1244 (1994). "Although

4   the employee may say, 'I quit,' the employment relationship is

5   actually severed involuntarily by the employer's acts, against

6   the employee's will. As a result, a constructive discharge is

7   legally regarded as a firing rather than a resignation." <u>Id.</u> at

8   1244-45. To establish a constructive discharge claim, a

9   plaintiff must prove that: (1) his or her working conditions at

10  the time of his or her resignation were so intolerable or

11  aggravated that (2) a reasonable person in his or her position

12  would have been compelled to resign, and (3) the employer either

13  intentionally created or knowingly permitted the intolerable

14  working conditions. <u>Id.</u> at 1247.

15          Initially, plaintiff's constructive discharge claim

16  cannot survive summary judgment because he evidently never

17  resigned; rather, the evidence on record demonstrates that Sara

18  Lee unequivocally fired him. Constructive discharge is fashioned

19  as an alternative claim for cases in which employers essentially

20  force employees to quit in hopes of depriving them of several

21  tort and contract remedies associated with termination. <u>See</u>

22  <u>Turner</u>, 7 Cal. 4th at 1251 ("[C]onstructive discharge is neither

23  a tort nor a breach of contract, but a doctrine that transforms

24  what is ostensibly a resignation into a firing."). Thus, an

25  employee's actual resignation functions as a necessary

26  —————————————————

27  latter claim would stem from plaintiff's July 17, 2006 DFEH
    Complaint in which he failed to exhaust his administrative
    remedy, the court cannot consider this alternative pleading. <u>See</u>
28  <u>supra</u> section II.B.3.

prerequisite to bringing a claim based upon constructive discharge.  <u>See</u> <u>Hubbard v. Bimbo Bakeries USA, Inc.</u>, No. 06-25981, 2008 WL 740307, at *2 (9th Cir. Mar. 18, 2008) (noting that the elements of a constructive discharge claim include the intuitive "element that requires the plaintiff to have actually quit"); <u>Ryan v. Patterson Dental Supply, Inc.</u>, No. 98-1177, 2000 WL 640859, at *25 (D. Or. May 12, 2000) ("A constructive discharge claim necessarily requires that the employee actually resign.").

Assuming arguendo that plaintiff could furnish evidence that he resigned, his constructive discharge claim would nonetheless fail.  In determining whether a reasonable employee would feel compelled to resign, courts generally consider factors such as

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

<u>Brown v. Kinney Shoe Corp.</u>, 237 F.3d 556, 566 (5th Cir. 2001).

Not only has plaintiff failed to submit evidence supporting any of the above factors, but the facts demonstrate that Sara Lee undertook diligent and effective efforts aimed at maintaining tolerable working conditions--including issuing a reprimand upon Mayberry and reorganizing its facility's operations in a manner that ultimately lead to Mayberry's transfer.  <u>See</u> <u>Turner</u>, 7 Cal. 4th at 1247 (a constructive discharge will only be held to exist if "the employer either

40

intentionally created or knowingly permitted working conditions
that were so intolerable or aggravated <u>at the time of the</u>
<u>employee's resignation</u> that a reasonable employer would realize
that a reasonable person in the employee's position would be
compelled to resign") (emphasis added).  After this prompt
reorganization, plaintiff admitted that he no longer reported to
Mayberry and no longer worked in the same department or on the
same time shift as Mayberry.  (Greenly Dep. 212:7-18.)

        The resulting conditions cannot be said to have been
"sufficiently extraordinary and egregious to overcome the normal
motivation of a competent, diligent, and reasonable employee to
remain on the job to earn a livelihood and to serve his or her
employer."  <u>Turner</u>, 7 Cal. 4th at 1246; <u>see also</u> <u>Addy v. Bliss &</u>
<u>Glennon</u>, 44 Cal. App. 4th 205, 218-19 (1996) ("[A]n employee may
not be unreasonably sensitive to his [or her] working
environment.") (internal citation and quotations omitted).
Indeed, at the time of plaintiff's termination, Sara Lee's
ultimate response was "a textbook example of how to respond
appropriately to an employee's harassment complaint."  <u>Casenas v.</u>
<u>Fujisawa USA, Inc.</u>, 58 Cal. App. 4th 101, 103 (1997); <u>see</u> <u>id.</u> at
115-19 (summary judgment on plaintiff's constructive discharge
claim was appropriate where the employer investigated plaintiff's
sexual harassment claim, issued severe written and oral
reprimands and warnings to the harasser, and takes "extraordinary
care" to ensure that plaintiff and harasser would be separated).
Accordingly, the court will grant Sara Lee and Mayberry's motion
for summary judgment with respect to plaintiff's claim of
constructive discharge.

3.    Claim Seventeen (Wrongful Termination in Violation

of Public Policy)

In Loggins v. Kaiser Permanente Int'l, 151 Cal. App.

4th 1102 (2007), the California Court of Appeals recognized that

> [w]hen a plaintiff alleges retaliatory employment
> termination . . . as a claim for 'wrongful employment
> termination in violation of public policy,' and the
> defendant seeks summary judgment, California follows the
> burden-shifting analysis of McDonnell Douglas Corp. v
> Green, 411 U.S. 792 (1973), to determine whether there
> are triable issues of fact for resolution by a jury.

Id. at 1109.

In the first stage of this analysis, the "plaintiff

must show (1) he or she engaged in a 'protected activity,' (2)

the employer subjected the employee to an adverse employment

action, and (3) a causal link existed between the protected

activity and the employer's action." Yanowitz v. L'Oreal USA,

Inc., 36 Cal. 4th 1028, 1042 (2005). If the employee

successfully establishes these elements and thereby demonstrates

the existence of a prima facie case, the burden shifts to the

employer to provide evidence that there was a legitimate, non-

retaliatory reason for the adverse employment action. Morgan v.

Regents of Univ. of Cal., 88 Cal. App. 4th 52, 68 (2000). If the

employer produces this evidence, the presumption of retaliation

"drops out of the picture," Yanowitz, 36 Cal. 4th at 1042, and

the burden shifts back to the employee to provide "substantial

responsive evidence" that the employer's proffered reasons were

untrue or pretextual. Martin v. Lockheed Missiles & Space Co.,

29 Cal. App. 4th 1718, 1735 (1994).

a.    Prima Facie Case

42

1   Plaintiff alleges that Sara Lee[24] violated public
2   policy when it terminated him in retaliation for his acts related
3   to filing a workers' compensation claim and complaining about
4   Mayberry's conduct.  "In order to sustain a [prima facie] claim
5   of wrongful discharge in violation of fundamental public policy,
6   [the plaintiff] must prove that his [or her] dismissal violated a
7   policy that is (1) fundamental, (2) beneficial for the public,
8   and (3) embodied in a statute or constitutional provision.")
9   Turner v. Anheuser-Busch, Inc., 7 Cal. 4th 1238, 1256 (1994)
10  (footnotes omitted).

11   Here, both plaintiff's invocation of his workers'
12  compensation privileges[25] and his assertion of his right to be

---

14   [24]   "As a matter of law, only an employer can be liable for
15  the tort of wrongful discharge in violation of public policy."
    Khajavi v. Feather River Anesthesia Med. Group, 84 Cal. App. 4th
16  32, 53 (2000).  Thus, although plaintiff alleges this claim
    against both Sara Lee and Mayberry, no such claim can be
17  maintained against individual supervisory employees.  See Reno v.
    Baird, 18 Cal. 4th 640, 663, (1998) (finding that the tort of
18  wrongful termination in violation of public policy applies to the
    employer, not supervisory employees).  Accordingly, the court
19  will grant Mayberry's motion for summary judgment with respect to
    plaintiff's claim for wrongful termination in violation public
20  policy.

21   [25]   In California, a terminated employee may seek statutory
    redress for an alleged retaliatory discharge via either FEHA or
22  section 132a of the California Labor Code.  Cal. Lab. Code §
    132a.  Because plaintiff did not exhaust his remedy as to his
23  FEHA claim for retaliation, see supra II.B.3, he thus cannot
    identify a violation embodied in FEHA as the public policy in
24  which his instant claim is based upon.  See Reno v. Baird, 18
    Cal. 4th 640, 664 (1998) (holding that plaintiff, who was unable
25  to allege a FEHA claim, cannot base his "wrongful termination of
    public policy" claim upon this alleged FEHA violation because
26  "[i]t would be absurd to forbid a plaintiff to sue a [defendant]
    under the FEHA, then allow essentially the same action under a
27  different rubric").  Therefore, for purposes of this section, the
    court will interpret the violation that plaintiff alludes to as a
28  violation of the public policy against retaliation as embodied in
    section 132a.  See Hamblin v. Coinstar, Inc., No. 07-1258, WL

1  free from sexual harassment derive from fundamental rights

2  embodied in statutes and thus qualify as protected activities for

3  which subsequent "discharge is against public policy and affects

4  a duty which inures to the benefit of the public at large."

5  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 669 (1988); see

6  also Craig v. Sw. Airlines, Co., No. 04-1086, 2007 WL 4105980, at

7  *4 n.4 (C.D. Cal. Jan. 23, 2007) ("A claim alleging retaliation

8  for receiving a workers' compensation claim may be brought as a

9  claim for wrongful termination in violation of public policy.");

10 Rojo v. Kliger, 52 Cal. 3d 65, 89-91 (1990) (holding that sexual

11 harassment allegations can form the basis of a wrongful

12 termination in violation of public policy claim because "article

13 I, section 8 [of the California Constitution] is declaratory of

14 [California's] fundamental public policy against sex

15 discrimination, including sexual harassment," and "[t]he public

16 policy against sex discrimination and sexual harassment in

17 employment, moreover, is plainly one that 'inures to the benefit

18 of the public at large rather than to a particular employer or

19 employee.'" (quoting Foley, 47 Cal. 3d at 669)).

20         Finally, because plaintiff was terminated after Sara

21 Lee became aware that he had engaged in these activities, a

22 favorable interpretation of the facts supports plaintiff's

23 demonstration of the required causal connection between the

24 protected activities and his subsequent discharge.  See Morgan v.

25 Regents of Univ. of Cal., 88 Cal. App. 4th 52, 70, 73 (2000) (to

26 support an actionable "causal connection" inference, "[t]here

27 ───────────────

28 4181822, at *2 ("[T]he employee can use section 132a to file a
   common law termination in violation of public policy claim.").

must be some evidence that the person responsible for the adverse employment action was aware that some protected activity had taken place").  Thus, plaintiff has sufficiently established a prima facie case for wrongful termination in violation of public policy.

b.  Legitimate, Non-Retaliatory Reason for
Termination

In response, Sara Lee has produced sufficient evidence demonstrating a legitimate, non-retaliatory reason for plaintiff's employment termination: excessive absenteeism.  See Houston v. Regents of Univ. of Cal., No. 04-4443, 2006 WL 1141238, at *32 (N.D. Cal. May 1, 2006) (granting summary judgment because evidentiary showing of employee's excessive absenteeism supports employer's legitimate, non-retaliatory reason for discharge); Latu v. Am. Airlines, No. 00-3301, 2001 WL 1658289, at *5 (N.D. Cal. Dec. 18, 2001) (same).  As detailed above, plaintiff compiled a considerable record of absenteeism that extends across his entire tenure with Sara Lee.  See supra section I (recounting several documented warnings--from 1992 through 2004--made to plaintiff regarding his absenteeism and/or tardiness).  These infractions resulted in multiple write-ups, three suspensions, and the issuance of two "last chance" agreements.  (Diaz Decl. ¶ 6.)  On more than one occasion, plaintiff's absences resulted in serious disruption to bakery operations.  (Sara Lee's Mem. in Supp. of Mot. for Summ. J. 4:2-3.)

Plaintiff's April 2006 conduct was by far the most egregious example of his blatant violation of the attendance

45

1   policy, therein substantiating Sara Lee's justification for his

2   termination.  Specifically, just three weeks after returning from

3   his one-year leave and tagged with medical clearance to resume

4   his full duties with "no restrictions," plaintiff quickly accrued

5   multiple violations of the attendance policy despite repeated

6   warnings from management that further incidents of unauthorized

7   absenteeism would result in his termination.  (Diaz Decl. ¶ 17;

8   Potratz Decl. Ex. G; Greenly Dep. 211:13-16.)  At the time of his

9   termination, plaintiff had accrued in excess of fourteen points

10  due to his attendance infractions--i.e., more than four points

11  over the amount that justifies employee termination.  (See Diaz

12  Decl. Ex. A ("Progressive Discipline will be used after (6)

13  points as follows . . . Point 10 - discharge.").)

14              c.   Substantial Evidence of Pretext

15          In order to counter evidence that the defendant's

16  employment decision was non-retaliatory, the plaintiff is

17  obligated to produce "specific, substantial evidence of pretext."

18  Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994); see

19  also Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1029

20  n.6 (9th Cir. 2006) (noting that a plaintiff may not create a

21  genuine issue of material fact by relying solely on the

22  plaintiff's subjective belief that the challenged employment

23  action was unnecessary or unwarranted).  Plaintiff does not

24  dispute his significant attendance problems, but rather asserts

25  that Sara Lee treated other similarly situated employees more

26  leniently and purposely disregarded a doctor's note excusing his

27  most recent run of absences.  (Greenly Supplemental Decl. ¶ 18.)

28          Plaintiff has not raised a triable issue of fact based

                                46

on evidence that other frequently absent employees did not suffer adverse employment action. Plaintiff's only support for this conclusory assertion is an internal document acknowledging that one other Sara Lee employee had, at some point in time, accumulated attendance infraction points over the termination bar. (Greenly Supp. Decl. Ex. J.) Palpably absent is any evidence that Sara Lee failed to discipline or subject this employee to some form of adverse employment action. Further, even if this particular worker received a lesser penalty, there is no evidence that he or she had blatantly violated the attendance policy to the same excessive extent or for a similar significant period of time as plaintiff had. See Loggins v. Kaiser Permanente Int'l, 151 Cal. App. 4th 1102, 1113 (2007) (holding that the plaintiff failed to raise a triable issue of fact as to pretext where there was no evidence that her admittedly delinquent coworkers devoted the same "substantial time and resources to pursuing their own business during work hours" as plaintiff).

Additionally, plaintiff's "doctor's note" was merely a copy of his physician's written notations listing several past days of work that plaintiff told him he had missed due to his anxiety. (See Greenly Dep. 237:3-6 ("Q: And so you [plaintiff] went to see this doctor on May 12, and you told him, 'I couldn't go to work for these days, and I need a doctor's note'?" A: "Yes.").) This material falls well short of the official attendance policy's requirement that an employee submit appropriate documentation of a serious medical condition. (Diaz Decl. Ex. A ("Attendance Policy").) Notably, plaintiff has also

47

conceded that he did not receive clinical advice on each of the
dates set forth in the doctor's note, (Greenly Dep. 241:5-9),
further debasing the evidentiary value, if any, of this
submission.

While plaintiff has asserted that he engaged in
protected activities benefitting from "a substantial public
policy prohibiting an employer from discharging an employee" for
their performance, Foley v. Interactive Data Corp., 47 Cal. 3d
654, 670 (1988), he has failed to submit the requisite
"substantial responsive evidence" from which a trier of fact
could find Sara Lee's articulated reason for terminating his
employment is a pretextual smokescreen.  Villiarimo v. Aloha
Island Air, Inc., 281 F.3d 1054, 1063 n.9 (9th Cir. 2002) ("[At]
the final step of McDonnell Douglass burden-shifting, a
plaintiff's prima facie case, combined with sufficient evidence
to find that the employer's asserted justification is false, may
permit the trier of fact to conclude that the employer unlawfully
discriminated.") (emphasis in original) (citations and quotations
omitted).  Accordingly, the court will grant Sara Lee's motion
for summary judgment with respect to plaintiff's claim for
wrongful termination in violation of public policy.

D.    Labor Management Relations Act Section 301(a)
      Preemption of Claim Nine (Intentional Infliction of
      Emotional Distress), Claim Ten (Negligent Infliction of
      Emotional Distress), Claim Eleven (Negligence), Claim
      Twelve (Negligence Per Se), Claim Thirteen (Negligent
      Hiring, Training, Supervision, and/or Retention), and
      Claim Twenty (Breach of Duty to Pay All Wages and

48

1    Provide Work Breaks) (All Alleged Against Sara Lee)

2          Section 301 of the Labor Management Relations Act

3    (LMRA) provides federal jurisdiction over "suits for violation of

4    contracts between an employer and a labor organization."   29

5    U.S.C. § 185(a).   This allows for preemption of any state law

6    claims that are "dependent upon" or "inextricably intertwined

7    with" a CBA.   Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213

8    (1985).   The United States Supreme Court has articulated two

9    general instances when this may occur: (1) when the "claims [are]

10   founded directly on rights created by [CBAs]" and (2) "where the

11   right is created by state law . . . [but the application of state

12   law] requires the interpretation of a [CBA]."   Hayden v.

13   Reickerd, 957 F.2d 1506, 1509 (9th Cir. 1992) (quoting Lingle v.

14   Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411-12 (1988)).

15         In its prior Order addressing this action, this court

16   held that § 301 preempted plaintiff's ninth, tenth, eleventh,

17   twelfth, thirteenth, eighteenth, nineteenth, and twentieth claims

18   because they could be resolved only by referring to the terms of

19   the CBA between Sara Lee and the Union.   Greenly v. Sara Lee, No.

20   06-1775, 2006 WL 3716769, at *3-6 (E.D. Cal. Dec. 15, 2006).

21   Therefore, as an employee seeking to vindicate personal rights

22   under the CBA, plaintiff must have first attempted to exhaust any

23   mandatory or exclusive grievance procedures provided in the CBA

24   prior to bringing suit on his preempted claims.   See United

25   Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29,

26   37 (1987) (holding that while the courts may at times enforce

27   CBAs, "where the [CBA] provides grievance and arbitration

28   procedures, those procedures must first be exhausted and courts

49

must order resort to the private settlement mechanisms without
dealing with the merits of the dispute"); <u>DelCostello v. Int'l</u>
<u>Bhd. of Teamsters,</u> 462 U.S. 151, 163 (1983) ("[A]n employee is
required to attempt to exhaust any grievance or arbitration
remedies provided in the [CBA]."); <u>Soremekun v. Thrifty Payless,</u>
<u>Inc.</u>, 509 F.3d 978, 986 (9th Cir. 2007) ("[A]n employee's failure
to exhaust contractually mandated procedures precludes judicial
relief for breach of the [CBA] and related claims.").

It is undisputed that the CBA in this action sets forth
an explicit grievance procedure. (Ochs-Tillotson Decl. Ex. K
(copy of CBA).)  In fact, the Union filed three grievances on
behalf of plaintiff relevant to this action: the first in April
2005 (challenging Mayberry's write-up regarding plaintiff's
presumed poor job performance); the second in May 2006
(challenging plaintiff's suspension based on violations of the
attendance policy); and the third in May 2006 (challenging
plaintiff's termination).  Sara Lee declares--and plaintiff has
not submitted evidence demonstrating otherwise--that none of the
allegations in plaintiff's ninth and tenth (based on Mayberry's
alleged harassing conduct), eleventh through thirteenth (based on
Sara Lee's purportedly handling of Mayberry's alleged harassing
conduct), and twentieth (based on Sara Lee's alleged failure to
pay wages and provide rest breaks) were the subject of the
aforementioned grievances.  Rather, the evidence demonstrates
that plaintiff notified Sara Lee of Mayberry's purported sexual
harassment only through a non-Union internal complaint and,
subsequently, by filing the instant action--both in lieu of a
Union grievance filing.  Therefore, Sara Lee contends that

plaintiff's claims nine through thirteen and twenty fail as a

matter of law because plaintiff has not exhausted the grievance

procedure explicitly set forth in the CBA.

Making no genuine attempt to argue--and thus

conceding--that the CBA's grievance procedure was not exhausted

as to these claims, plaintiff relies solely on a stand-alone,

conclusory assertion that such exhaustion was not required

because the Union breached its duty of fair representation. (See

SAC ¶ 95 ("Plaintiff is excused from the exhaustion requirement

on the grounds that the union breached its duty of fair

representation.").)  While an employee can indeed support an

action for the breach of a CBA by showing that his or her union

violated its duty of fair representation, Soremekun, 509 F.3d at

987, plaintiff categorically fails to direct the court to

evidence demonstrating that the Union did not satisfy its

statutory duty in fairly representing plaintiff in connection

with any of his CBA-related complaints and/or proposed

grievances.[26]  See id. at 988 ("If an employee does not agree

---

[26]    Plaintiff's memorandum in opposition to Sara Lee's
motion for summary judgment with respect to the above § 301
"failure to exhaust" argument consists, in its entirety, of the
following statement:  "Defendants breached the CBA as set forth
in Plaintiff's discovery responses and Declarations."  (Pl.'s
Mem. in Opp'n to Sara Lee's Mot. for Summ. J. 21:8-9.)  The court
is unable to locate so much as a shred of cognizable evidence
supporting plaintiff's statement despite a comprehensive review
of all submissions.  Further, this newfound assertion that
"defendants" breached the CBA contradicts plaintiff's own
allegations that the Union--who are not named defendants in this
action--breached its duty of fair representation.  In light of
this indolent response, the court takes the opportunity to remind
plaintiff that the judiciary's job is not to sift through
scattered papers in order to manufacture arguments for parties.
Greenwood v Fed. Aviation Admin., 28 F. 3d 971, 977 (1994)
("Judges are not like pigs, hunting for truffles buried in

with the results reached through the procedures of the CBA, the employee, in order to bring an individual suit directly against the employer for breach of the CBA, must allege and prove the union breached its duty of fair representation" (emphasis in original) (quoting Waldron v. Boeing Co., 388 F.3d 591, 594 (8th Cir. 2004))).

Even if plaintiff had produced evidence raising a triable issue of fact that the Union breached its duty of fair representation, the instant claims would be barred because this category of hybrid § 301/fair representation claims are subject to the six-month statute of limitations set forth in section 10(b) of the National Labor Relations Act (NLRA).  29 U.S.C. § 160(b); see also DelCostello, 462 U.S. at 169-70 (where employee alleges a Union's breach of fair representation, the six-month statute of limitations set forth in NLRA barred filing of the claim); Kalombo v. Hughes Mkt., Inc., 886 F.2d 258, 259 (9th Cir. 1989) (plaintiff's claim of breach of the duty of fair representation against local union was subject to NLRA's six-month statute of limitations).  For instance, if plaintiff felt that the Union had breached its duty of fair representation because it did not pursue a separate grievance in connection with Mayberry's alleged sexual harassment, a § 301 claim based on such a premise must have been brought no later than December 2005--i.e., within six months of the time that plaintiff admits he was put on notice of the Union's position.  (Greenly Dep. 378:3-9.)

---

briefs." (quoting United States v Dunkel, 927 F.2d 955, 956 (7th Cir. 1991))).

1    Accordingly, because plaintiff did not exhaust the

2 grievance procedure set forth in the CBA, the court will grant

3 Sara Lee's motion for summary judgment with respect to

4 plaintiff's claims for intentional infliction of emotional

5 distress, negligent infliction of emotional distress, negligence,

6 negligence per se, negligent hiring/training/supervision/

7 retention, and breach of duty to pay all wages and provide work

8 breaks.

9    E.   Contract Claims Alleged Against Sara Lee:  Claim

10        Eighteen (Breach of Contract) and Claim Nineteen

11        (Breach of the Implied Covenant of Good Faith and Fair

12        Dealing)

13    As referenced in the preceding section, the court's

14 prior Order held that plaintiff's eighteenth and nineteenth

15 claims for breach of contract and breach of the implied covenant

16 of good faith and fair dealing, respectively, were preempted by

17 LMRA section 301 because both could be resolved only by referring

18 to the terms of the CBA.[27]   Greenly v. Sara Lee, No. 06-1775,

19 2006 WL 3716769, at *4 (E.D. Cal. Dec. 15, 2006).  Unlike his

20 other claims, plaintiff effectively exhausted his administrative

21 remedies when the Union filed its May 2006 grievance challenging

22 plaintiff's termination and the Board of Adjustment--after

23 consideration of the grievance--subsequently upheld the

24 termination.

25    Federal courts have extremely limited jurisdiction to

26 ─────────────────

27        [27]   It is undisputed that plaintiff did not have a
   contractual relationship with Sara Lee separate from the CBA.
28 Thus, the CBA alone governed plaintiff's employment with Sara Lee
   at all relevant times during this action.

review arbitral determinations arising from labor disputes.  <u>See</u> <u>Major League Baseball Players Ass'n v. Garvey</u>, 532 U.S. 504, 509 (2001) (interpretation of the underlying contract is ordinarily a question for the arbitrator, not the court); <u>Federated Dep't</u> <u>Stores v. United Foods & Commercial Workers</u>, 901 F.2d 1494, 1496 (9th Cir. 1990) ("The scope of review of an arbitrator's decision in a labor dispute is extremely narrow.").  As the Ninth Circuit previously held:

> The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from [the CBA].  If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced.  This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.

<u>Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173</u>, 886 F.2d 1200, 1209 (9th Cir. 1989).

Ultimately, there are only three articulated exceptions to the general rule of deferring to the arbitrator's decision: "(1) when the arbitrator's award does not draw its essence from the [CBA] and the arbitrator is dispensing his own brand of industrial justice; (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy." <u>Federated Dep't Stores</u>, 901 F.2d at 1496.  Plaintiff does not explicitly address any of these three exceptions; rather, the sole decipherable, exception-fitting argument the court is able to generously discern from plaintiff's papers remains his conclusory assertion that the Union breached its duty of fair representation contrary to public policy.  (SAC ¶ 126); <u>see also</u> <u>Local 13, Intern.</u>

54

1  <u>Longshoremen's & Warehousemen's Union v. Pac. Maritime Ass'n,</u> 441

2  F.2d 1061, 1066 (9th Cir. 1971) ("[A]lthough grievance procedures

3  were exclusive and the arbitrator's award final, an employee may

4  sue for breach of contract under section 301(a) if his union

5  violated its duty to represent him fairly.") (citing <u>Vaca v.</u>

6  <u>Sipes</u>, 386 U.S. 171, 185-86 (1967)).

7          Plaintiff is once again unable to support his assertion

8  that the Union failed to fairly represent him with any evidence

9  in the record.  See <u>Berg v. Kincheloe</u>, 794 F.2d 457, 459 (9th

10  Cir. 1986) ("The party opposing the summary judgment may not rest

11  on conclusory allegations, but must set forth specific facts

12  showing that there is a genuine issue for trial.").  In fact, the

13  evidence demonstrates that the only actions related to

14  plaintiff's termination attributable to the Union are its

15  decision to file a grievance on plaintiff's behalf, appeal Sara

16  Lee's decision to deny the grievance, and zealously advocate in

17  front of the Board of Adjustment.

18          Accordingly, because it must defer to the Board of

19  Adjustment's final decision to uphold plaintiff's termination as

20  consistent with the terms of the CBA, the court will grant Sara

21  Lee's motion for summary judgment with respect to plaintiff's

22  claims for breach of contract and breach of the implied covenant

23  of good faith and fair dealing.

24          IT IS THEREFORE ORDERED that:

25          (1) Mayberry's motion for summary judgment with respect

26  to plaintiff's allegations for battery (claim one), assault

27  (claim two), sexual battery (claim three), and defamation (claim

28  fifteen) be, and the same hereby is, DENIED;

                              55

(2) Sara Lee and Mayberry's motions for summary judgment with respect to plaintiff's allegations for sexual harassment/hostile work environment (claim five) and failure to prevent (claim seven) be, and the same hereby are, DENIED;

(3) Sara Lee's motion for summary judgment with respect to plaintiff's allegations for failure to accommodate (claim eight), intentional infliction of emotional distress (claim nine), negligent infliction of emotional distress (claim ten), negligence (claim eleven), negligence per se (claim twelve), negligent hiring/training/supervision/retention (claim thirteen), breach of contract (claim eighteen), breach of the implied covenant of good faith and fair dealing (claim nineteen), and breach of duty to pay all wages and provide work breaks (claim twenty) be, and the same hereby is, GRANTED;

(4) Sara Lee and Mayberry's motions for summary judgment with respect to plaintiff's claims for retaliation (claim four), disability discrimination (claim six), invasion of privacy (claim fourteen), constructive discharge (claim sixteen), and wrongful termination in violation of public policy (claim seventeen) be, and the same hereby are, GRANTED.

DATED:  April 29, 2008

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

56